UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY MAUREEN SILVA, et al., | No. 2:24-cv-03674-DJC-SJR |
| Plaintiffs, | |
| v. | <u>ORDER</u> |
| FORD MOTOR COMPANY, et al., | |
| Defendants. | |

This is a lemon law case involving an allegedly defective 2019 Ford Fiesta. Plaintiffs Kelly and Lauren Silva sued Defendant Ford Motor Company under California's Song-Beverly Consumer Warranty Act. After more than a year of litigation, the parties settled. Plaintiffs now move for attorneys' fees, costs, and expenses. (ECF No. 21.) For the reasons explained below, Plaintiffs' Motion is granted in part and denied in part.

////
////
////
////
////

**BACKGROUND**

On June 28, 2022, Plaintiffs purchased a 2019 Ford Fiesta. (Compl. (ECF No. 1-1) ¶ 8.) The vehicle allegedly presented with various defects, and after multiple attempts at repair, Ford was unable to conform the vehicle to warranty. (Compl. ¶¶ 22–24; Daghighian Decl. (ECF No. 21-1) ¶¶ 22–25.) Plaintiffs sent a demand letter to Ford by certified mail on December 11, 2023, requesting that the vehicle be either replaced or refunded. (Daghighian Decl. ¶ 26; Douglas Decl. (ECF No. 23-1) ¶ 1.) In response to the demand letter, Ford emailed Plaintiffs on December 20, 2023, called on December 27, 28, and 29, 2023, and mailed a letter on December 29, 2023. (Douglas Decl. ¶¶ 2–3.) Ford did not receive any response from Plaintiffs. (*Id.*) Thereafter, on January 24, 2024, Plaintiffs filed suit in Solano County Superior Court, alleging certain violations of the Song-Beverly Act. (*See generally* Compl.) After nearly a year of litigation, Ford removed the action to this Court on December 23, 2024. (Notice of Removal (ECF No. 1).) Plaintiffs moved to remand, but before the fully briefed motion could be heard, the parties settled. (Notice of Settlement (ECF No. 16).) By the parties' stipulation, the Court retained jurisdiction over the terms of the settlement. (ECF Nos. 18, 19, 20, 22.) The parties also expressly agreed that Plaintiffs, as prevailing party, could seek an award of reasonably incurred fees and costs under California Civil Code section 1794(d) and that California law should apply. (Notice of Settlement at 2.) Following attempts at informal resolution of the outstanding fees, on July 30, 2025, Plaintiffs moved for attorneys' fees, costs, and expenses. (Mot. (ECF No. 21).) Ford filed an opposition and Plaintiffs replied. (Opp'n (ECF No. 23); Reply (ECF No. 24).) Pursuant to Local Rule 230(g), the Court finds this matter suitable for resolution on the papers.

**DISCUSSION**

Under the Song-Beverly Act, Civ. Code § 1790 *et seq.*, the prevailing party is entitled to attorney's fees, costs, and expenses. Civil Code section 1794(d) provides that:

> If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action.

Civ. Code ¶ 1794(d).

Plaintiffs request $56,895.69 in attorneys' fees and costs. In opposing the motion, Ford first contends Plaintiffs acted in bad faith prior to litigation and are thus not entitled to any attorneys' fees. Ford alternatively asserts that the requested fees should be reduced because the rates and hours claimed are unreasonable and that a negative multiplier is warranted. The parties do not dispute the amount of costs. The Court addresses each argument in turn.

**I. Attorneys' Fees**

The lodestar method is typically used in determining reasonable attorneys' fees. *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996). The lodestar calculation is the "product of reasonable hours times a reasonable rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). "[T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on . . . (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Ketchum*, 24 Cal. 4th at 1132. The fee applicant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.

**A. Prompt Repurchase and/or Bad Faith**

Before reaching the substance of the attorneys' fees calculation, the Court first addresses the alleged prelitigation actions taken by the parties. Ford asserts that Plaintiffs are not entitled to any attorneys' fees because they acted in bad faith by failing to respond to Ford's attempts to communicate with them after Ford received

1   Plaintiffs' initial buyback demand letter and, instead, prematurely filed suit a month
2   later. (Opp'n at 4–5.) Plaintiffs object that Ford failed to tender any buyback offer at
3   all during litigation. (*See generally* Reply.)
4       California Civil Code section 1793.2(d)(2) lays out the manufacturer's obligation
5   to "promptly" repurchase or replace a defective vehicle it is unable to repair. The
6   statute provides that if a manufacturer is unable to service or repair a new motor
7   vehicle to conform to its express warranties after a reasonable number of repair
8   attempts, "the manufacturer shall either promptly replace the . . . vehicle . . . or
9   promptly make restitution to the buyer." Civ. Code § 1793.2(d)(2). Plaintiffs rely on
10  California appellate decisions *Krotin v. Porsche Cars North America, Inc.*, 38 Cal. App.
11  4th (1995), and *Lukather v. General Motors, LLC*, 181 Cal. App. 4th 1041 (2010), to
12  contend they had no obligation to request a buyback from Ford and, instead, Ford
13  had an affirmative duty to buy the vehicle back without their asking after repairs were
14  unsuccessful. (Reply at 4.) Thus, Plaintiffs argue, because Ford breached this duty
15  and failed to tender a buyback offer after conducting reasonable repairs on the Fiesta,
16  they were justified in filing a lawsuit. (*Id.*)
17      The Court disagrees with Plaintiffs' characterization of *Krotin* and *Lukather*. At
18  least two district courts have declined to adopt the argument that these cases stand
19  for the proposition that manufacturers have an affirmative duty to offer to repurchase
20  a defective vehicle prior to a buyer's repurchase demand.[1] In *Islas v. Ford Motor*
21  *Company*, the court found that such an argument "read too much into *Krotin* and
22  *Lukather*" and that while a manufacturer may make a pre-demand offer on its own
23  initiative, it was not "require[ed] to do so before th[e consumer's] prompting." No. 18-

---

[1] In *Krotin*, the court was analyzing the correctness of a single jury instruction pertaining to the *buyer's* responsibilities in rejecting a vehicle under the Song-Beverly Act. 38 Cal. App. 4th 294, 300 (1995). In evaluating *Krotin*, the *Islas* court observed that such a limited issue "does not encompass the imposition or scope of any duty that might be imposed upon a manufacturer under Song-Beverly." 2019 WL 10855294, at *6. In *Gonzalez*, the district court reinforced *Islas*'s point, observing that to find such an affirmative duty "is at odds with how the Song-Beverly Act is typically understood." 2024 WL 5371341, at * 4. The *Gonzalez* court thus held that there was no such affirmative duty. *Id.*

4

cv-2221-GW(SPx), 2019 WL 10855294, at *6 (C.D. Cal. Jul. 29, 2019). In *Gonzalez v. Volkswagen Group of America*, the district court concurred with *Islas*, concluding that manufacturers do not have an affirmative duty to offer a replacement vehicle or repurchase prior to a consumer making such a request. No. 2:22-cv-06058-JLS-JC, 2024 WL 5371341, at * 4 (C.D. Cal. Jan. 24, 2024). In line with this authority, the Court declines to adopt Plaintiffs' interpretation of *Lukather* and *Krotin*.

While there is no set timeframe for an offer to be prompt, California courts have found that a manufacturer's buyback offer made between 40 and 50 days after a purchaser's demand request is reasonably prompt. *Carver v. Volkswagen Grp. of Am., Inc.*, 107 Cal. App. 5th 864, 879–80 (2024) (collecting cases). Here, Plaintiffs mailed their buyback demand letter to Ford on December 12, 2023, and filed suit on January 24, 2024. (Douglas Decl. ¶¶ 1–3.) This abbreviated timespan does indicate that Plaintiffs did not allow sufficient time for Ford to submit a buyback offer before filing suit, even as Ford was attempting to contact them about the demand letter. But the record also demonstrates that Ford did not tender an offer even after litigation commenced, that the parties engaged in more than a year of litigation, that Ford elected to remove the case to federal court a few months before trial, and that Ford agreed to settle the case on terms identifying Plaintiffs as the prevailing party. Considering the entire record, Ford's failure to tender any buyback offer undercuts their prelitigation bad faith argument against Plaintiffs. Accordingly, the Court rejects the argument and turns to the reasonableness of attorneys' fees requested.

**B. Reasonable Attorneys' Fees**

Plaintiffs seek $37,230.00 for attorneys' fees with a lodestar enhancement of .5x, in the amount of $18,615.00, for a total amount of $55,845.00. (Mot. at 14.) Five attorneys litigated this case on behalf of Plaintiffs and the chart below reflects the time expended and the attorneys' requested rates:

////

////

| Attorney | Years in Practice | Position | Hours Billed | Proposed Rate | Total |
|---|---|---|---|---|---|
| Sepehr Daghighian | 19+ | Partner | 5.2 | $625.00 | $3,250.00 |
| Alastair Hamblin | 13 | Associate | 32.0 | $550.00 | $17,600.00 |
| Bill Oppenheim | 5 | Associate | 26.7 | $350.00 | $9,345.00 |
| Miguel Ortiz | 19 | Associate | 5.8 | $525.00 | $3,045.00 |
| Michael Rosenstein | 30+ | Partner | 5.7 | $700.00 | $3,990.00 |

**1. Reasonableness of Hourly Rates**

The Court first determines whether the hourly rates requested by Plaintiffs' attorneys are reasonable. As previously noted, the California Supreme Court has explained that "the lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Ketchum*, 24 Cal. 4th at 1132 (internal citation omitted); *see also Goglin v. BMW of N. Am.*, 4 Cal. App. 5th 462, 470 (2016) (setting out factors) (citation omitted).[2] Moreover, "the

---

[2] Some courts in the Eastern District have declined to follow a community-based approach in determining whether rates are reasonable under Song-Beverly Act. *See, e.g.*, *Heffington v. FCA US LLC*, No. 2:17-cv-00317-DAD-JLT, 2020 WL 5017610, at *6 n.1 (E.D. Cal. Aug. 25, 2020) (distinguishing forum-based framework used by federal courts from factors analysis under *Goglin*). However, in *Ketchum*, the California Supreme Court reasoned that "the lodestar was based on detailed documentation by counsel and there was extensive litigation concerning the time spent and the *prevailing hourly rate in the area for comparable services*." 24 Cal. 4th at 1140 (emphasis added). As *Ketchum* remains good law, the undersigned evaluates reasonableness in part based on the community in which the case was litigated, that is, the Eastern District. *See also Pulliam v. HNL Auto. Inc.*, 60 Cal. App. 5th 396 (2021) (assessing market rates in the local community to determine lodestar).

contingency adjustment may be made at the lodestar phase of the court's calculation or by applying a multiplier to the noncontingency lodestar calculation (but not both)." *Horsford v. Bd. of Trs. of Cal. State Univ.*, 132 Cal. App. 4th 359, 395 (2005) (citation omitted).

In support of their requested rates, Plaintiffs provide declarations by counsel, the billing records, the 2019 United States Consumer Law Attorney Fee Report, the 2021 Wolters Kluwer Real Rate Report, and several state and federal decisions in comparable cases in Southern California in which Plaintiffs' requested fees were granted in whole or in large part. (*See generally* Daghighian Decl. and Exs. A–H.) In opposition, Ford points to three state court decisions that applied a lower blended rate of $350/hour for prevailing firms in Song-Beverly actions. (Douglas Decl. ¶¶ 10–12 and Exs. K–M.)

Plaintiffs' counsel explains that the hourly rates the firm charges are the same for both contingent and noncontingent litigation. (Daghighian Decl. ¶ 5.) Plaintiffs' counsel argues that Los Angeles rates should control, which is the metropolitan community in which they practice, rather than local rates in the case venue. (Mot. at 16.) Plaintiffs rely on *Horsford v. Board of Trustees of California State University* for the principle that because "financial incentives should attract attorneys who are sufficient to the cause," their out-of-town Los Angeles rates are reasonable. (Mot. at 17 (citing 132 Cal. App. 4th at 399.)) *Horsford* is distinguishable, however, as the plaintiff in that case diligently and unsuccessfully sought local counsel before hiring a more expensive San Francisco attorney to litigate significant claims involving racial discrimination by a local public entity. In reversing the trial court in *Horsford*, the California Court of Appeal explicitly highlighted plaintiff's extensive efforts to secure more affordable counsel and found that "in the absence of any realistic indication plaintiff could find local counsel, it is an abuse of discretion to fail to consider an hourly rate based on counsel's 'home' market rate." 132 Cal. App. 4th at 399; *see also Nichols v. City of Taft*, 155 Cal. App. 4th 1233, 1243 (2007) (applying *Horsford* and

7

explaining "a court's use of reasonable rates in the local community, as an integral part of the initial lodestar equation, is one of the means of providing some objectivity to the process of determining reasonable attorney fees.") While a plaintiff's threshold showing of impracticability of obtaining local counsel is "not onerous," *Horsford*, 132 Cal. App. 4th at 399, here, the record is silent regarding Plaintiffs' efforts, if any, to secure local counsel. Moreover, unlike in *Horsford*, a case involving weighty racial discrimination claims, this case is a straightforward lemon law matter under the Song-Beverly Act, which is "not complex and do[es] not require a significant amount of legal analysis or novel pleading." *Meeks v. FCA US LLC*, No. 1:22-cv-0761 JLT CDB, 2024 WL 4437098, at *5 (E.D. Cal. Oct. 7, 2024). Therefore, *Horsford* does not assist Plaintiffs in establishing that their out-of-town rates are reasonable.

Considering all the evidence, the Court finds that Plaintiffs' requested rates are too high. The Southern California cases provided by Plaintiffs do not establish the prevailing rate appropriate for Solano County or the Eastern District of California. Several of Plaintiffs' exhibits are decisions from the Central District, which includes Los Angeles County, where the rates are higher. Because Plaintiffs "do[ ] not report that local counsel was unwilling to prosecute [their] claims or are unavailable, rates from outside the forum may not be applied." *Meeks*, 2024 WL 4437098, at *5; *see also Barjon v. Dalton*, 132 F.3d 496, 500–02 (9th Cir. 1997) (affirming the court's decision to decline to award out-of-district billing rates).

Recent awards of attorneys' fees in the Eastern District range from $200 to $750, with rates exceeding $600 reserved for attorneys who have practiced approximately 30 years. *See, e.g.*, *Meeks*, 2024 WL 4437098, at *8 (setting a range of rates in lemon law action between $300 for 5–6 years of legal experience and $525 for 20+ years of legal experience); *Owen v. Hyundai Motor Am.*, No. 2:22-cv-00882-KJM-CKD, 2024 WL 3967691, at *3–4 (E.D. Cal. Aug. 28, 2024) (collecting cases, and finding the hourly rates in cases arising under the Song-Beverly Act range from $200 to approximately $600); *Davis v. Mercedes-Benz USA, LLC*, No. 2:21-cv-0174-KJM-

8

KJN, 2022 WL 16529527, at *2 (E.D. Cal. Oct. 27, 2022) (reducing rate in lemon law action to $250 for attorneys who practiced law for less than ten years); *Siafarikas v. Mercedes-Benz USA, LLC*, No. 2:20-cv-01784-JAM-AC, 2022 WL 16926265, at *3 (E.D. Cal. Nov. 14, 2022) (approving rate in lemon law action of $250 for an attorney who practiced law for three years and $500 for an attorney who practiced law for 21 years); *Aoki v. Gilbert*, No. 2:11-cv-02797-TLN-CKD, 2022 WL 956949, at *2 (E.D. Cal. May 29, 2022) (observing that "$450 an hour [was] a reasonable rate for an attorney with fifteen years of experience"); *Garybo v. Leonardo Bros*, No. 1:15-cv-01487-DAD-JLT, 2021 WL 449350, at *5 (E.D. Cal. Sept. 30, 2021) (adopting in class action the hourly rate of $500 for attorneys admitted to practice for 20 years); *Mostajo v. Nationwide Mut. Ins. Co.*, No. 2:17-cv-00350-DAD-AC, 2023 WL 2918657, at *11 (E.D. Cal. Apr. 12, 2023) (approving of "hourly rates ranging from $650 through $750" for "attorneys with over thirty years of experience" for purposes of calculating a lodestar in complex class action); *Seebach v. BMW of N. Am., LLC*, No. 2:18-cv-00109-KJM AC, 2020 WL 4923664, at *3 (E.D. Cal. Aug. 21, 2020) (setting rates of $200 for 1.5 years of legal practice and $505 for 20 years of legal practice). Against this backdrop, Ford's requested blended rate of $350 per hour is too low. Accordingly, the hourly rates for counsel will be adjusted to align with rates in the Eastern District.

Sephehr Daghighian's rate is adjusted to $525 for his almost 20 years of legal practice and his partner status; Michael Rosenstein's rate is adjusted to $600 for his 30 years of legal practice and partner status; Alastair Hamblin's rate is adjusted to $450 for his 13 years of legal practice; Bill Oppenheim's rate is adjusted to $300 for his 5 years of legal practice; and Miguel Ortiz's rate is adjusted to $500 for his almost 20 years of legal practice. The chart below reflects the Court's adjustments:

////
////
////
////

| Attorney | Years in Practice | Position | Adjusted Rate |
|---|---|---|---|
| Sepehr Daghighian | 19+ | Partner | $525.00 |
| Alastair Hamblin | 13 | Associate | $450.00 |
| Bill Oppenheim | 5 | Associate | $300.00 |
| Miguel Ortiz | 19 | Associate | $500.00 |
| Michael Rosenstein | 30+ | Partner | $600.00 |

### 2. Reasonableness of Hours Expended

"A trial court may not rubber stamp a request for attorney fees, but must determine the number of hours reasonably expended." *Morris v. Hyundai Mot. Am.*, 41 Cal. App. 5th 24, 38 (2019) (citation omitted). In evaluating the fees, the trial court should consider "whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended." *Id.* The court must exclude "duplicative or excessive" time from its fee award. *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 161 (2006) (cleaned up); *see also Ketchum*, 24 Cal. 4th at 1132 (explaining "inefficient or duplicative efforts [are] not subject to compensation").

Ford requests the Court strike 24.5 hours from Plaintiffs' invoice and raises three objections to Plaintiffs' billed hours. First, that Plaintiffs cannot recover fees incurred to negotiate prevailing party language; second, that Plaintiffs cannot recover fees incurred after Ford's settlement offer; and third, that Plaintiffs cannot recover fees for time spent drafting a motion to remand or conducting discovery. (Opp'n at 8–11.)

////

### i. Time Billed for Negotiating Prevailing Party Language

Ford contends that Plaintiffs' fees incurred to negotiate prevailing party language should be stricken as it unreasonably prolonged settlement. (Opp'n at 9.) Moreover, Ford objects that the fees incurred to draft a meet and confer letter and reply brief in support of a motion for remand were "post settlement" and should be stricken. (*Id.*)

The record reflects that the parties engaged in mediation on February 5, 2025. (Daghighian Decl. ¶ 40; Invoice (ECF No. 21-2) at 8.) The mediator sent an email to counsel that same day stating that the parties settled for a statutory buyback in the amount of $38,000 with fees to be determined by motion. (Douglas Decl. ¶ 6 and Ex. J (ECF No. 23-11) at 2.) However, a notice of settlement was not filed until March 12, 2025, more than a month later. (*See generally* Notice of Settlement.)

A settlement in principle "is not a settlement at all because, like all contracts, it is not binding until the parties agree on all its material terms." *Levitz v. The Warlocks*, 148 Cal. App. 4th 531, 534–35 (2007) (citation omitted); *see also Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998) ("Consent [to a compromise settlement] is not mutual, unless the parties all agree upon the same thing in the same sense." (citation omitted)). As the parties did not agree on certain material terms following mediation, there was no settlement before March 12, 2025, the date when the notice of settlement was filed on the docket. Accordingly, billing related to settlement discussions is appropriate.

As to the number of hours billed during the negotiation period following mediation, Plaintiffs' reply brief to the pending motion to remand was due on February 15, 2025, only ten days after mediation. It was appropriate for Plaintiffs to bill for drafting the brief. Nor does the Court find 6.2 hours to analyze an opposition and draft a reply brief to be unreasonable. Similarly, the remaining billing entries prior to the filing of the notice of settlement were appropriate as they related to the

motion for remand and settlement discussions.  The Court declines to reduce any time related to this objection.

### ii. Time Billed Following Settlement Offer

Ford next contends that all of Plaintiffs' fees following the February 5, 2025, offer should be stricken as they were not necessary to the prosecution of the case. (Opp'n at 9.)  Given the foregoing discussion, the Court will evaluate hours incurred only after March 12, 2025, when the parties filed the notice of settlement.

Plaintiffs' billing invoice after March 12, 2025, encompasses the following eight entries:

1. May 22, 2025: .90 hours (54 minutes) by Bill Oppenheim for "telephone conference with paralegals re status of settlement and release and attorneys' fees; prepare declaration re settlement status; direct paralegal to file same for case management";
2. May 27, 2025: .10 hours (6 minutes) by Bill Oppenheim (.10 hours) for "receive and read Court's Order granting stipulation to retain jurisdiction; calendar same for case management";
3. June 12, 2025: .30 hours (18 minutes) by Michael Rosenstein for "[e]mail correspondence with opposing counsel re: resolution of Plaintiff's fees and costs under CC 1794(d)";
4. June 27, 2025: 1.30 hours (78 minutes) by Alastair Hamblin for "[a]nalyze file, audit invoices and begin drafting motion for attorney fees";
5. June 30, 2025: 1.60 hours (96 minutes) by Alastair Hamblin for "[c]ontinue drafting declaration";
6. July 7, 2025: 2.80 hours (168 minutes) by Alastair Hamblin for "[f]inished drafting motion for attorney fees and related documents";
7. August 15, 2025: 5 hours (anticipated) by Alastair Hamblin to analyze "opposition to Plaintiffs' motion for attorney fees and draft [reply]"; and

8. August 29, 2025: 2.50 hour (anticipated) by Bill Oppenheim to "[p]repare for and attend hearing on Plaintiffs' motion for attorney fees." (Invoice at 8–9.)

"The provision for recovery of costs and attorney fees in section 1794(d) is an important aspect of [ ] consumer protection, and without it many would not be able to pursue a remedy." *Wohlgemuth v. Caterpillar Inc.*, 207 Cal. App. 4th 1252, 1262 (Cal. Ct. App. 2012). The Court finds that the hours spent by Plaintiffs in effectuating the settlement and drafting the fee motion are reasonable. In addition, the anticipated time set aside for analyzing the opposition and drafting the reply to the fee motion is also reasonable. As to the final entry, the hearing on the fee motion was vacated pursuant to the Court's order taking the matter under submission under Local Rule 230(g). (*See* ECF No. 25.) Accordingly, the anticipated 2.50 hours for Bill Oppenheim to "[p]repare for and attend the hearing" (Invoice at 9), are stricken from the Invoice.

To summarize, the Court reduces the Invoice by 2.50 hours for billing incurred to prepare for the hearing on the fee motion.[3]

### iii. Time Billed for Drafting Motion to Remand and Conducting Discovery

Last, Ford contends that the hours billed for Plaintiffs' work in analyzing the notice of removal, drafting the motion to remand, and conducting discovery are excessive. (Opp'n at 10.) Plaintiffs explain that two of the attorneys who reviewed the notice of removal are the partner and associate assigned to the case and that the third attorney who stepped in to handle the motion to remand only did so when the assigned attorneys were unavailable. (Reply at 9; Suppl. Daghighian Decl. ¶ 6 (ECF No. 24-1).) Thus, Plaintiffs assert, "it was necessary for Mr. Hamblin to also review the removal documents [and] [t]he remaining hours were spent researching the issues

---

[3] A chart reflecting the Court's final modifications to Plaintiffs' billed hours is in subsection iv: "Final Calculation of Lodestar."

13

presented by removal and drafting the motion to remand and related documents." (Suppl. Daghighian Decl. ¶ 6.)

The Court finds these tasks were necessary to the prosecution of the matter, as the removal to federal court occurred nearly a year after litigation commenced and a third attorney was asked to step in. The hours billed for drafting the motion to remand do not appear unnecessarily duplicative, and the Court declines to reduce any of these hours related to the motion for remand.

As to the remaining objections regarding the amount of discovery conducted in this case, the various May 17, 2024, entries by Bill Oppenheim regarding discovery each pertain to a different discovery device and are not duplicative. Similarly, the July 16, 2024, entry by Miguel Ortiz to review and respond to Ford's discovery responses does not appear excessive or duplicative. The Court declines to reduce the hours billed toward discovery.

### iv. Final Calculation of Lodestar

In light of the analysis explained above, the lodestar amount is as follows:

| Attorney | Adjusted Rate | Requested Hours | Adjusted Hours | Lodestar |
|---|---|---|---|---|
| Sepehr Daghighian | $525.00 | 5.2 | 5.2 | $2,730.00 |
| Alastair Hamblin | $450.00 | 32.0 | 32.0 | $14,400.00 |
| Bill Oppenheim | $300.00 | 26.7 | 24.2 | $7,260.00 |
| Miguel Ortiz | $500.00 | 5.8 | 5.8 | $2,900.00 |
| Michael Rosenstein | $600.00 | 5.7 | 5.7 | $3,420.00 |

Accordingly, the total lodestar amount is $30,710.00.

### C. Lodestar Multiplier

A lodestar fee award "may be adjusted by the court based on factors including . . . (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Ketchum*, 24 Cal. 4th at 1132. "A contingent fee agreement only favors an upward departure when there is an 'uncertainty of prevailing on the merits and of establishing eligibility for the award.'" *Seebach*, 2020 WL 4923664, at *6 (citation omitted).

This case did not involve any novel or unusually challenging issues. The amount of time and skill required to properly resolve this litigation, counsel's success in resolving the matter, and the case's novelty or complexity are reflected in the number of billable hours recorded and the reasonable hourly rate. Nor was counsel precluded from taking other work. *See Nagesh v. BMW of N. Am., LLC*, No. 2:18-cv-00839-KJM-JDP, 2021 WL 1060357, at *5 (E.D. Cal. Mar. 19, 2021). Although counsel completed this work on a contingent fee basis, the court finds an enhancement to the lodestar award is not warranted in this case. *See Seebach*, 2020 WL 4923664, at *6 ("Given that plaintiff's counsel "regularly undertakes this type of work," the Court does not find counsel faced such uncertainty of prevailing on the merits that a multiplier is warranted."). Accordingly, Plaintiffs' request for a lodestar multiplier is denied.

### D. Costs

The parties do not dispute the amount of costs, thus, the Court awards Plaintiffs $1,050.69 in costs.

////
////
////
////
////

**ORDER**

For the reasons stated above, the Court ORDERS as follows:

1. Plaintiffs' Motion for Attorneys' Fees (ECF No. 21) is GRANTED IN PART and DENIED IN PART, as described above;
2. Plaintiffs are awarded $30,710.00 in attorneys' fees, and $1,050.69 in costs.
3. Defendant shall file a certificate of service regarding payment of fees and costs immediately following remittance to Plaintiffs.
4. The parties shall file dispositional documents pursuant to E.D. Cal. L.R. 160(b) within fourteen (14) days thereafter.

IT IS SO ORDERED.

Dated: **October 8, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC8 – silva24cv03674.mot.attorneysfees